Loanzon Law Firm PC
Tristan C. Loanzon **Judge Hellerstein**
386 Park Avenue South, Suite 1914
New York, New York 10016
(212) 760-1515
*Attorney for Beall Consulting Svcs., Ltd. & David Beall*



**'08 CIV 7883**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BEALL CONSULTING SERVICES, LTD. and     :    Civil Action No.
DAVID BEALL,     :

       Plaintiffs,     :

           v.     :        **COMPLAINT**

KBMG LLC and HOWARD S. KRANT,     :

       Defendants.     :

    :        **Jury Trial Demanded**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiffs Beall Consulting Services, Ltd. and David Beall, by their attorney Loanzon

Law Firm PC, for their complaint against Defendants KBMG LLC and Howard S. Krant, Inc.,

allege as follows:

### NATURE OF ACTION

1.     This is an action for accounting malpractice against a New Jersey corporation

KBMG LLC and one of its partners, Howard S. Krant. Plaintiff David Beall and his company

Beall Consulting Services, Ltd. hired KBMG and Krant in 1995 to prepare the company's and

David's personal tax returns. The written agreement required Krant to respond to any IRS audit

or questions about the filed returns. Krant failed to do so, and gave clearly bad accounting

advice. As a result of Krant's negligence, BCS and Beall are subjects of continuing collection

actions by the federal and state government in the amount of $516,480.76. BCS and Beall

already had to pay significant sums to the government as a result of Defendants' actions.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Beall Consulting Services, Ltd. is a New York corporation and has its office located at 44 Crescent Road, Port Washington, New York 11050.

3.     Plaintiff David Beall resides in Port Washington, New York.

4.     Defendant KBMG LLC is a corporation incorporated in New Jersey, and maintains its principal place of business at 106 Apple Street, Suite 101D, Tinton Falls, New Jersey 07724.

5.     KBMG LLC is licensed to conduct business in New York as a foreign corporation, but is not incorporated in New York.

6.     KBMG LLC has an office in New York City, which is not the company's principal place of business.

7.     Defendant Howard S. Krant is a resident of New Jersey.  Upon information and belief, Krant resides in Monmouth Beach, New Jersey.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 (diversity).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) and (c)(venue).

## ALLEGATIONS

9.     BCS and Beall hired Krant to prepare the company's and Beall's individual tax returns beginning at least in 1996.

10.     In 1997, Krant was associated with KBMG's predecessor company, Krant Bialick & Luisi LLP ("KBL").

2

11.     KBL is not an active corporation according to a publicly-available database from the New York State Department of State.

12.     Krant is subject to personal jurisdiction in New York because he purposefully conducted business in New York with a New York resident.

13.     Krant and KBMG also maintained a satellite office in New York City.

14.     In a letter from KBL to BCS, dated March 1997, KBL and BCS entered into a written agreement by which KBL and Krant will provide accounting services to BCS and Beall.

15.     More specifically, the March 1997 agreement stated that Krant "will prepare and remit back to [BCS] all tax returns, both corporate and individual within six (6) weeks of receipt of all documentation required to construct said proper returns."

16.     In the March 1997 agreement, Krant wrote: "If, for whatever reason, your returns are chosen for audit, we will absolutely immediately handle said examination and defend our positions vigorously."

17.     The parties did not sign any other written agreement.

18.     Upon information and belief, KBL later became known as KBMG.

19.     KBMG continued KBL's relationship with BCS and Beall.

20.     BCS's fiscal period begins on June 1 of every year and ends on May 31 of every year (hereinafter "fiscal year").

21.     Every year, BCS tax returns are due on the 15th of the fourth month after the close of the fiscal year.  Therefore, BCS tax returns are due on September 15 every year.

22.     Every year, BCS sends a package to KBMG within six weeks after the end of the tax year, which discuss the most pertinent issues or questions, and attach complete expense and income exhibits.

3

23.    No party, whether it be KBMG or the taxing authorities has ever suggested that that these income and expense exhibits submitted by BCS have been incorrect.

BCS Corporate Tax Returns for Fiscal Year 2002-2003

24.    Krant prepared the tax returns for BCS for the fiscal year ending May 2003.

25.    Krant did not finish the returns for the filing deadline of September 2003, and therefore, had to file for an extension.

26.    The extended deadline was February 15, 2004.

27.    Krant was responsible for dealing with requests for information during the audit of BCS tax returns for fiscal year 2002-2003.  Krant assured BCS by phone calls and emails that he was providing all requested information to the IRS.  As a result, BCS believed that Krant was providing the necessary information to the IRS.

28.    In July 2006, the IRS notified BCS that it made proposed changes to the BCS fiscal return 2002-2003.  The IRS questioned the $120,000.00 in "Other Deductions" contained in the 2002-2003 returns.

29.    The July 2006 IRS letter indicated that it would be waiting for verification of the above-mentioned deductions made by BCS for fiscal year 2002-2003.

30.    The July 2006 IRS letter imposed on BCS a penalty for "accuracy-related (negligence)" in the amount of $9,217.00.

31.    Krant received notice of the July 2006 IRS Letter.  Krant was responsible for communicating with IRS about questions in the BCS fiscal 2002-2003 returns.

32.    Krant did not respond to July 2006 IRS letter.  Krant did not submit the information requested by the IRS.

4

33. For several months, Krant assured by phone calls and emails BCS and Beall that he was responding to the IRS requests, when in fact, he was not.

34. BCS continued receiving IRS letters which indicate that penalties and interests are being assessed against BCS for its lack of response to the information requests. The IRS also sent notices that BCS was getting levied for the taxes owed. As soon as the IRS letters are received, Beall sent the IRS letters to Krant by facsimile.

35. Krant never responded to issues raised by the IRS in the July 2006 letter.

36. The taxpayer advocate who was working with BCS on the matter related to Beall that the fiscal year 2002-2003 IRS inquiry was closed due to "no response" from BCS's accountant.

37. Because the IRS failed to receive any response to its information requests, it assessed a penalty against BCS in the total amount of $19,859.85.

38. Because the IRS failed to receive any response to its information requests, it assessed interests on the alleged tax owed by BCS. The interest total $19,143.04.

39. As a result of the IRS disallowance of "Other Deductions" from the BCS returns, the IRS assessed additional taxes against BCS in the amount of $46,085.00.

40. Had Krant responded to the IRS request for information, the IRS would not have assessed the late penalties, interest, and additional taxes against BCS.

BCS Corporate Tax Returns for Fiscal Year 2003-2004

41. Krant prepared the tax returns for BCS for the period ending May 31, 2004.

42. Krant did not finish the returns for the filing deadline of September 15, 2004, and therefore, had to file for an extension.

43. In July 2006, the IRS notified BCS that it made proposed changes to the BCS fiscal return 2003-2004. The proposed change includes the disallowance of the following from BCS's 2003-2004 returns: (a) $120,000.00 in "Consulting Fees," and (b) $40,000.00 in "Pension, profit sharing plans."

44. The July 2006 IRS letter indicated that it would be waiting for verification of the above-mentioned deductions made by BCS.

45. The July 2006 IRS letter imposed on BCS a penalty for "accuracy-related (substantial understatement)" in the amount of $12,480.00.

46. Krant received notice of the July 2006 IRS Letter.

47. Krant was responsible for dealing with requests for information during the audit of BCS tax returns for fiscal year 2003-2004. Krant assured BCS by phone calls and emails that he was providing all requested information to the IRS. As a result, BCS believed that Krant was providing the necessary information to the IRS.

48. Krant did not respond to July 2006 IRS letter. Krant did not submit the information requested by the IRS.

49. For several months, Krant assured BCS and Beall that he was responding to the IRS requests, when in fact, he was not. Krant communicated his assurances by emails and phone calls to Beall.

50. BCS continued receiving IRS letters which indicate that penalties and interests are being assessed against BCS for its lack of response to the information requests. The IRS also sent notices that BCS was getting levied for the taxes owed. As soon as the IRS letters are received, Beall sent the IRS letters to Krant by facsimile.

51. Krant never responded to issues raised by the IRS in the July 2006 letter.

52. The taxpayer advocate who was working with BCS on the matter related to Beall that the fiscal year 2003-2004 IRS inquiry was closed due to "no response" from BCS's accountant.

53. Because the IRS failed to receive any response to its information requests regarding the BCS fiscal 2003-2004 returns, it assessed a penalty against BCS in the total amount of $58,266.28.

54. Because the IRS failed to receive any response to its information requests, it assessed interest on the alleged tax owed by BCS. The interest total $41,859.16.

55. As a result of the IRS disallowance of deductions, consulting fees, and pension plan from the BCS returns, the IRS assessed additional taxes against BCS in the amount of $62,400.00.

56. As a result of the IRS assessment due to BCS's underpayment of taxes, the NYS Department of Taxation and Finance imposed interest against BCS in the amount of $1,369.75.

57. As a result of IRS assessment arising from the disallowance of deductions, consulting fees, and pension plan, the NYS Department of Taxation imposed additional taxes of $24,808.00, interest of $10,051.90, and penalty of $6,202.00.

58. Had Krant responded to the IRS request for information, the IRS and the NYS Department of Taxation and Finance would not have assessed the late penalties, interest, and additional taxes against BCS.

BCS Corporate Tax Returns for Fiscal Year 2004-2005

59. Krant prepared the tax returns for BCS for the period ending May 31, 2005.

60.    Krant did not finish the returns for the filing deadline of September 15, 2005, and therefore, had to file for an extension.

61.    In July 2006, the IRS notified BCS that it made proposed changes to the BCS fiscal return 2004-2005. The proposed change includes the disallowance of the following from BCS's 2005 returns: (a) $120,000.00 in "Consulting Fees," and (b) $40,000.00 in "Pension, profit sharing plans."

62.    The July 2006 IRS letter indicated that it would be waiting for verification of the above-mentioned deductions made by BCS.

63.    Krant received notice of the July 2006 IRS Letter.

64.    Krant was responsible for dealing with requests for information during the audit of BCS tax returns for fiscal year 2004-2005. Krant assured BCS by phone calls and emails that he was providing all requested information to the IRS. As a result, BCS believed that Krant was providing the necessary information to the IRS.

65.    Krant did not respond to July 2006 IRS letter. Krant did not submit the information requested by the IRS.

66.    For several months, Krant assured BCS and Beall that he was responding to the IRS requests, when in fact, he was not. Krant communicated his assurances by emails and phone calls to Beall.

67.    BCS continued receiving IRS letters which indicate that penalties and interests are being assessed against BCS for its lack of response to the information requests.

68.    The IRS also sent notices that BCS was getting levied for the taxes owed. As soon as the IRS letters are received, Beall sent the IRS letters to Krant by facsimile.

69.    Krant never responded to issues raised by the IRS in the July 2006 letter.

8

70.    Krant even went to the extent of telling Beall that he was communicating with a certain Bert Gates and Rene Taylor at the IRS concerning BCS tax.

71.    Krant gave Beall the phone numbers for Mr. Gates and Ms. Taylor.  When Beall called the numbers given by Krant, there was no Mr. Gates or Ms. Taylor that existed at the phone numbers given.

72.    The fact that Krant failed to establish the existence of these individuals, and despite BCS's efforts to locate them strongly suggested that Krant fully fabricated the names and numbers of the IRS individuals in order to cover-up his inactions and incompetence.

73.    Because the IRS failed to receive any response to its information requests regarding the BCS fiscal 2004-2005 returns, it assessed a penalty against BCS in the total amount of $18,011.86.

74.    Because the IRS failed to receive any response to its information requests, it assessed interests on the alleged tax owed by BCS.  The interests total $11,213.85.

75.    Beall began to communicate directly with the IRS on the BCS fiscal year return 2004-2005.

76.    Beall was able to convince the IRS that the allowance for consulting fees and pension plan were valid deductions.

77.    While the IRS had agreed to waive the penalties (but not interest) assessed against BCS, the IRS assessed additional taxes on BCS as a result of two tax strategies recommended by Krant.

9

Capital Loss Strategy

78.     The first strategy concerned Krant's advice that capital losses of a C corporation may be carried over from prior years in order to offset any corporation capital gains.

79.     BCS sold stocks in fiscal year 2002-2003 at a loss of $89,000.00 in reliance on Krant's advice.  BCS sold stocks acting under the belief that this would reduce its 2002-2003 taxes by reducing corporate income by the corresponding capital loss.

80.     Beall had no reason to believe that Krant gave wrong advice.

81.     When Beall noticed that BCS had not benefited from the anticipated tax benefit, Beall wrote to Krant in March 2004 inquiring why the anticipated tax benefit caused by the sale of $89,000.00 in stocks were not being realized.

82.     Beall again wrote to Krant in July 2004 asking about the still unrealized tax gain from the sale of the stocks for a loss.

83.     Beall again wrote to Krant in June 2005 because BCS still had not received the benefit anticipated from the sale of the stocks for a loss.

84.     For years beginning in fiscal year 2002-2003, Krant had given BCS assurances that the capital losses may be carried over to the future.  He never indicated otherwise.

85.     Krant assured Beall that he was working on resolving the issue, and promised on numerous occasions that he will produce to Beall a spreadsheet that would satisfy the IRS.

86.     When KBMG and Krant finished BCS tax returns for fiscal year 2004-2005, the capital loss from 2002-2003 was reflected on the returns.

87.     In 2006, BCS was selected for audit concerning its 2004-2005 tax returns.

88.     The IRS questioned the income reduction that BCS claimed for the sale of the stocks for a loss.

89.    It was during the IRS audit that BCS learned that it cannot reduce its income using capital loss without corresponding capital gains.

90.    KBMG and Krant gave BCS the wrong advice.

91.    Krant continued to make assurances that his analysis was correct, and that a spreadsheet he was working on would satisfy the IRS questions, and Krant assured Beall that he would achieve a "satisfactory outcome."

92.    No spreadsheet was produced by Krant.

93.    To cover up his actions or inactions, and at the very last moment, Krant invented an excuse to justify the income reduction.

94.    Krant's invented excuse was rejected by the IRS.

95.    Krant's actions and inactions violated the accepted standards in professional accounting.

96.    As a result of the wrong advice, the IRS disallowed the offset.  IRS assessed interest in the amount of $8,552.00.

97.    As a result of the wrong advice, BCS had to refile its New York state tax returns and pay New York State $3,500.00 in interest, plus $2,245.68 in penalties for underpayment of taxes.


BCS Loan Strategy

98.    The second strategy that Krant gave BCS was concerning approximately $600,000.00 loan made by BCS to Beall.

99.    In reliance on Krant's advice, BCS loaned $600,000.00 to Beall for purchase of property.

11

100.    The loan was reported in BCS tax returns.

101.    The IRS deemed the $600,000.00 loan as a constructive dividend.

102.    As a result, Beall had to pay additional tax on his personal tax returns as a result of the IRS's characterization of the loan as constructive dividend.

103.    Krant failed to give proper advice to BCS on how to proceed with the $600,000.00 loan to Beall.

104.    As a result of Krant's failure to exercise reasonable accounting skills, Beall had to pay interest to the IRS the amount of $12,365.05 for 2005.

105.    For 2006, Beall had to pay interest to the IRS in the amount of $4,844.61 as a result of Krant's failure to exercise reasonable accounting skills.

BCS Federal Tax Returns for Fiscal Years 2005-2006

106.    BCS employed Krant to complete its corporate returns for fiscal year 2005-2006.

107.    Krant had also completed BCS's returns for the previous fiscal year, 2004-2005.

108.    BCS made an estimated tax payment of $32,168.00 in April 2006, as instructed by Krant.

109.    The tax payment was the estimate tax liability of BCS for the fiscal year 2005-2006.

110.    Krant filed an extension to file the 2005-2006 tax returns; the new extension was given until February 2007.

111.    Prior to filing the extension in April 2006, Krant had received all information from BCS needed to complete the tax return.

112.    Despite having all the information in his possession, Krant failed to complete the BCS tax returns for fiscal year 2005-2006.

113.    Beall repeatedly asked Krant by emails and phone calls about the status of the BCS fiscal 2005-2006 returns.

114.    Krant continued to respond by emails and phone calls that he was working on finishing the tax returns.

115.    On many occasions, Krant told Beall that his partner at KBMG, Larry Gitlitz, was helping him with the tax returns.

116.    The delay caused the IRS to impose penalties and interest against BCS.

117.    Krant did not give BCS a completed tax return until August 2007 – six months after the already-extended deadline.

118.    Upon receiving the completed tax return from Krant, Beall signed the returns for BCS, and submitted it to the IRS in August 2007 along with a tax payment of $45,165.00.

119.    Because it received the BCS returns late, the IRS imposed against BCS penalties and fees in the amount of $28,210.39.

120.    Because it received the BCS returns late, the IRS imposed against BCS interest in the amount of $7,267.77.

121.    Then again, the tax payment of $45,165.00 as reflected in the tax returns prepared by Krant was actually in error.  The total tax liability as computed by the IRS was $52,282.00.

122.    BCS had to send IRS another $7,117.00 in March 2008.

BCS Federal Tax Returns for Fiscal Years 2006-2007

123.    Because the 2005-2006 BCS returns were filed late (in August 2007), BCS could not comply with the filing deadline for the filing of the 2006-2007 tax returns.

124.    Krant advised BCS to file an extension to file the 2006-2007 returns, which BCS did, and advised BCS of the amount to send IRS for estimated tax payment.

125.    Pursuant to Krant's advice, BCS made an estimated tax payment in April 2008 of $49,766.00 for the anticipated tax liability for 2006-2007.

126.    BCS had to file an extension for the filing of the 2006-2007 returns because of Krant's failure to complete the prior year returns.

127.    IRS continued to impose late filing penalties and interest even if BCS made an extension request.

128.    As a result of Krant's delay, IRS imposed against BCS a penalty of $37,871.81 and interest of $4,787.57.

BCS State Tax Returns for Fiscal Years 2004-2005 and 2005-2006

129.    BCS employed Krant to complete its New York State tax returns for fiscal years 2004-2005 and 2005-2006.

130.    For fiscal year 2004-2005, Krant advised BCS to pay estimated tax payments in installments.

131.    Also, Krant advised BCS to pay installment tax payments for fiscal year ending May 2006.

14

132. On both occasions, it was in error to advise BCS to make installment payments because New York State required that estimated payments be made at one time during the beginning of the fiscal year.

133. Nonetheless, the estimated tax payments calculated by Krant was incorrect.

134. For fiscal year 2004-2005, BCS owed $2,434.00 instead of what Krant advised, which was $1,278.00.

135. For fiscal year 2005-2006, BCS owed $8,466.00 instead of what Krant advised, which was $2,748.00.

136. As a result of the incorrect estimated tax, the IRS levied penalties against BCS for what the IRS terms "accuracy-related negligence."

137. Moreover, Krant failed to provide BCS with the completed tax return for filing by the deadline date. As a result, both BCS tax returns for fiscal years 2004-2005 and 2005-2006 were late.

138. As a result, IRS imposed a late-filing penalty against BCS.

139. After the returns for 2005 and 2006 were filed, BCS began receiving from the IRS notice of underpayment of taxes.

140. Krant explained to Beall that the notices were probably based on misunderstanding and promised to resolve the matter with the IRS and NYS Department of Taxation and Finance.

141. Krant further explained that the New York State tax computer system was not equipped to handle a single estimated tax payment.

142. Krant knew or should have known that the advice he gave BCS was incorrect.

143. Krant did not resolve the tax aforementioned tax issues despite his repeated promises to Beall.

144. As a result of Krant's tardiness, the NYS Department of Taxation and Finance imposed penalty and interest against BCS in the amount of $2,250.96 for fiscal year 2004-2005, $6,689.87 for fiscal year 2005-2006, and $9,962.36 for the fiscal year 2006-2007

145. BCS paid the penalty and interest imposed by NYS Department of Taxation and Finance.

Federal Individual Tax Returns for Beall for 2006

146. Beall had hired Krant to prepare his and his wife's 2006 individual tax returns.

147. Unlike the corporate tax returns for BCS, the individual returns follow a calendar (as opposed to fiscal) year.

148. Beall supplied Krant with all documentation in order for the latter to complete the returns for Beall's signature.

149. Beall relied on Krant to tell him what estimated tax payments are due, and when they are due.

150. On April 14, 2006, Beall made an estimated tax payment of $6,040.00 to the NYS of Taxation and Finance as instructed by Krant.

151. The Beall individual returns for 2006 was not filed on time because Krant did not finish it as was agreed.

152. Upon information and belief, Krant did not file for an extension to file the returns.

153. Krant did not inform Beall that he needed to file an extension.

154.    On numerous occasions, Beall inquired about the status of the already-late 2006 returns.

155.    Each time he responded, Krant assured Beall by emails and phone calls that he was going to get the 2006 returns either the next day or a few days later.

156.    Beall never received the returns promised by Krant at any point in time.

157.    Beall asked Krant about the 2006 returns throughout the whole year 2007 and the early part of 2008.  But Krant never produced the 2006 returns in spite of numerous pledges.

158.    As a result of the delay, IRS had levied Beall with penalty in the amount of $18,095.00; the NYS Department of Taxation and Finance assessed a penalty of $3,894.00.

159.    As a result of delay, also in 2007, IRS had assessed the amount of $3,626.00 in interest and penalties against Beall.

160.    The IRS and the NYS Department of Taxation and Finance, on many occasions, imposed tax liens on Beall, which were reflected on Beall's personal credit histories.


Installment Agreement with the IRS

161.    To date, BCS owe the IRS a significant sum of money arising from the above-described actions and inactions of Krant and KBMG.

162.    In order to pay the assessments imposed by the IRS on BCS, BCS had entered an installment agreement with the IRS, by which BCS will pay $1,000.00 per month to the IRS from July 2008 until April 2009.

163.    Under the agreement, after April 2009, the IRS expects BCS to pay $5,000.00 per month for an indefinite duration, or until all BCS assessments are fully paid.

Costs of Correcting KBMG's and Krant's Malpractice

164.    BCS and Beall had written to the IRS and NYS Department of Taxation and Finance in order to appeal the assessments.

165.    To date, BCS and Beall had not received any decision from the IRS, although there is no certainty that they will prevail.

166.    To prepare the appeal, BCS and Beall had to spend at least $15,750.00 for a tax consultant.

167.    BCS and Beall also needed to hire another accountant to prepare the tax returns for which Beall had already paid Krant. Krant did not finish the tax returns, specifically the BCS returns for fiscal year 2006-2007 and the 2006 personal returns for Beall.

168.    BCS and Beall had to also pay another accountant in order to correct Krant's error concerning constructive dividend and capital loss (see above paragraphs 78-105).

169.    BCS and Beall paid the accountants a total of $5,600.00.


## CLAIM
### (ACCOUNTANT MALPRACTICE)

170.    BCS and Beall repeat and reallege paragraphs 1 through 169 as if set forth in full herein.

171.    KBMG and Krant had a duty to BCS and Beall to complete corporate and individual tax returns timely and correctly.

172.    KBMG and Krant had a duty to BCS and Beall to respond to IRS audits and requests for information.

173.    KBMG and Krant had a fiduciary duty under the law to respond truthfully and promptly to their clients, BCS and Beall.

18

174.    KBMG and Krant have obligations under New York State Education Law 6509(9); Title 8, Part 29.10 of N.Y.C.R.R.; and the AICPA Code of Professional Conduct to provide, upon the client's request, any work product performed for the client.

175.    KBMG and Krant breached those duties and obligations.

176.    KBMG and Krant's actions, errors, and omissions were departures from accepted standards and practice in the accounting profession.

177.    KBMG and Krant failed to use such skill and care in the performance of work for BCS as a reasonably skillful and diligent accountant would use in the same circumstances.

178.    Those actions, errors, and omissions were the proximate cause of injuries suffered by BCS and Beall.

179.    Those actions, errors, and omissions – including Krant's effort to cover-up – were made willfully and deliberately by Krant and KBMG.

180.    BCS and Beall, as a result, owed significant monetary sums to the IRS and NYS of Taxation and Finance.

181.    BCS and Beall have had to pay significant monetary sums to the IRS and NYS Department of Taxation and Finance, and have been sending monthly payments to the IRS pursuant to an installment agreement.

182.    Beall also suffered damages resulting from a lower credit rating as a result of IRS and NYS Department of Taxation and Finance liens on his credit history.

183.    The lowered credit rating made borrowing more expensive for Beall, resulting in damages to Beall in an amount to be proven at trial.

19

**WHEREFORE**, Plaintiffs BCS and Beall demand that the Court award judgment against KBMG LLC and Howard S. Krant:

(a)    On the Claim for Accounting Malpractice, in the amount of at least $516,480.76, with interests, costs, and disbursements;

(b)    Awarding punitive damages of $1,100,000.00 to Plaintiffs for Defendants' willful and deliberate actions; and

(c)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

<u>**JURY DEMAND**</u>

Beall Consulting Services, Ltd. and David Beall demand a trial by jury on all issues in this action that are triable by law.

Dated: New York, New York
　　　September 9, 2008

LOANZON LAW FIRM PC

By:_____
Tristan C. Loanzon
386 Park Avenue South, Suite 1914
New York, New York 10016
(212) 760-1515
*Attorneys for Beall Consulting Svcs., Ltd &*
*　David Beall*
